UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-2450

T. BRUCE SMITH, II,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-94-2693-3-19)

Submitted: February 27, 1998

Decided: June 18, 1998

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Karl H. Smith, STANTON, JONES & SMITH, Hartsville, South Car-
olina, for Appellant. Lois J. Schiffer, Assistant Attorney General,
David C. Shilton, Lisa E. Jones, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C.; J. Rene Josey, United States Attor-
ney, R. Emery Clark, Assistant United States Attorney, Columbia,
South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant T. Bruce Smith II conceded below that he violated the
Clean Water Act, 33 U.S.C.A. §§ 1251-1387 (West 1994 & Supp.
1997) (the Act), by unlawfully filling 2.2 acres of wetlands in Lee
County, South Carolina, without a permit from the United States
Army Corps of Engineers (the Corps). See 33 U.S.C.A. §§ 1311(a),
1344(a). The district court entered summary judgment for the United
States on the issue of liability and conducted a bench trial to deter-
mine the appropriate remedy. After considering the parties' post-trial
briefs, the court ordered Smith to pay a $35,000 civil penalty and
issued an injunction requiring him to restore the wetlands by remov-
ing the fill. Smith appeals, contending that the district court abused
its discretion. We affirm.

I

In 1987, Fred Veal, a biologist employed by the Corps, inspected
a 4.4-acre tract of land owned by Smith. The property included 3.2
acres of palustrine forested wetlands. Veal noticed that approximately
one acre of wetlands on the property had been filled with material
including sand, highway construction debris, tires, scrap building
materials, and asphalt shingles. The area also had been cleared of veg-
etation. The next day, the Corps issued a verbal cease and desist order
to Smith. Smith indicated that he would comply with the order. One
month later, the Corps sent a letter to Smith stating that the fill had
caused less than a one-acre impact on the wetlands and was therefore
authorized under a general nationwide permit. The Corps informed
Smith that proceeding with any additional fill without prior authoriza-
tion would violate the Act.

Smith nonetheless continued to fill the wetlands without a permit.
He hired several contractors to clear vegetation and to dump fill mate-

2

rial on the property. In early July 1991, Veal conducted a second inspection of the site and discovered that Smith had filled the remaining 2.2 acres of wetlands. Almost all trees and wetland vegetation had been removed, and there was evidence of recent fill activity. Smith had not attempted to receive authorization for his activities. The Corps notified Smith that he was in violation of the Act, and the United States commenced the subject action, seeking a civil penalty and an injunction requiring Smith to restore the land.

Smith conceded liability, and the district court conducted a bench trial to determine the appropriate remedy for Smith's violation of the Act. At trial, the government's chief witness was Veal, who testified that properly functioning wetlands acted as filters for pesticides and herbicides, were good for flood retention, and provided valuable cover and habitat for wildlife corridors. Between 1987 and 1991, Smith had destroyed the 2.2 acres of wetlands. Veal testified that removal of the fill material was necessary to restore the normal water flow and fluctuations at the property. Only after the fill was removed, and natural reseeding had taken place, could the wetlands return to their pre-fill status.

Johnnie Brigman, an environmental consultant, testified on Smith's behalf. He stated that the property in its present state was different than the forested wetlands system that previously existed. He concurred that the fill was preventing the water purification process and that the fill would have to be removed in order to restore the property.

After trial and the submission of post-trial briefs, the district court entered an order imposing a $35,000 civil penalty. The court also imposed an injunction requiring removal of the fill. The removal would restore the wetlands to its productive character and thereby serve the public interest. The court observed that the injunction would confer maximum environmental benefits, bore an equitable relationship to the degree and kind of wrong sought to be remedied, and was achievable as a practical matter.

II

Smith appeals only the district court's remedial order. We review both the amount of the civil penalty and the grant of the injunction

3

for abuse of discretion. <u>See Sierra Club v. Cedar Point Oil Co.</u>, 73 F.3d 546, 576 (5th Cir.), <u>cert. denied</u>, ___ U.S. ___, 65 U.S.L.W. 3241 (U.S. Oct. 7, 1996) (No. 95-1831) (amount of penalty); <u>Wilson v. CHAMPUS</u>, 65 F.3d 361, 363 (4th Cir. 1995) (grant of permanent injunction).

<u>Civil Penalty</u>

Once liability for a violation of the Act is established, the imposition of a civil penalty is mandatory. <u>See</u> 33 U.S.C.A. § 1319(d); <u>Leslie Salt Co. v. United States</u>, 55 F.3d 1388 (9th Cir.) (Pregerson, J., concurring), <u>cert. denied</u>, ___ U.S. #6D 6D6D#, 64 U.S.L.W. 3313 (U.S. Oct. 30, 1995) (No. 95-73); <u>Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.</u>, 897 F.2d 1128, 1142 (11th Cir. 1990). The district court has wide discretion in assessing the penalty, up to the statutory maximum of $25,000 per day. <u>See</u> 33 U.S.C.A. § 1319(d); <u>Atlantic States</u>, 897 F.2d at 1142. The district court is statutorily obligated to consider the following factors when setting the penalty: "the seriousness of the violation . . ., the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C.A. § 1319(d).

The district court considered each of these factors. The court noted that Smith had "not only destroyed the hydrological regime of these wetlands, but . . . introduced potentially environmentally hazardous materials to our fresh water system." Second, the court found that Smith's motive in filling the property was profit-driven: he anticipated building and operating a furniture store on the site. Further, the court observed that, even after the restoration of the property, it will be more attractive to potential buyers than it would have been prior to the destruction of trees and wetlands vegetation. Thus, Smith's activities had some lasting economic benefit to him. Third, Smith's tax records demonstrated that he could pay the penalty. Fourth, there was no evidence that Smith previously had violated federal or state environmental laws. Finally, the court noted "[t]he intentional, deliberate nature of Mr. Smith's violation, and his subsequent lack of cooperation with the Corps," which supported a higher penalty.

4

Smith contends in his brief that the district court should have considered the projected cost of restoration (between $45,000 and $75,000) in addition to his tax records, which the United States submitted under seal, when evaluating his ability to pay the penalty. Smith also argues that the court incorrectly construed his behavior as hostile and defiant. We do not find Smith's arguments persuasive. There is no requirement that the district court consider the cost of restoration when setting a penalty; moreover, the court had the projected cost before it and may have considered the cost when determining the amount of the penalty. In any event, the burden was Smith's to show an inability to pay the penalty, see Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1165-66 (D.N.J. 1989), aff'd in part and rev'd in part , 913 F.2d 64 (3rd Cir. 1990), and Smith neither presented testimony regarding his financial status nor submitted information concerning his claimed inability to pay for the restoration.

The district court addressed each factor set forth in § 1319(d) and supported its findings as to each factor with evidence of record. Under these circumstances, the court did not abuse its discretion in setting a civil penalty of $35,000.

Injunction

The Clean Water Act authorizes district courts to issue appropriate injunctive relief for certain violations of the Act. See 33 U.S.C.A. § 1319(b). The restorative injunction issued in this case requires Smith to remove all fill material from the wetlands save one acre of wetland fill to the east of the stream channel. Further restrictions concerning the fill on the one-acre area are established. Finally, Smith is to implement erosion control measures and to dispose of removed fill material appropriately.

Smith contends that the district court did not apply traditional equitable principles in fashioning the injunction. He asserts that the court should have made three findings prior to requiring restoration of the wetlands: (1) that the plan confers maximum environmental benefits; (2) that the plan is achievable as a practical matter; and (3) that the plan bears an equitable relationship to the degree and kind of wrong which it is intended to remedy. His primary contention is that the

5

court-ordered plan would not have significantly more environmental benefits than allowing the natural rejuvenation of the wetlands to continue uninterrupted. According to Smith, the property has reverted to a meadow-type wetlands and, in two years, will evolve into a swamp wetlands almost identical to the original wetlands. Additionally, Smith claims that the costs of the restoration plan significantly outweigh the plan's benefits.

Contrary to Smith's assertions, the district court considered the three factors that Smith insists it did not. First, the court found that removal of all fill would confer maximum environmental benefits. The wetlands as they previously existed served various functions, including habitat sites for wildlife, water filtration, food chain production, and flood water control. Removal of all the fill would reestablish the pre-existing hydrology and set the stage for restoring the area to a productive, swampy, palustrine forested wetland.

Second, the district court determined that removal of the fill was achievable as a practical matter. The court observed that there was no testimony that removal of the fill was not feasible, and the court took note of the area's proximity to highways as well as the cost of removing and transporting the fill.

Finally, the court found that the injunction bore an equitable relationship to the degree and type of wrong to be remedied. The court observed that Smith had destroyed the hydrological regime of the wetlands and, in the process, had introduced environmentally hazardous materials into the fresh water system. Smith continued to fill the wetlands after he was warned in 1987 that placing additional fill would require a permit. The district court characterized Smith's violations as "intentional, flagrant, egregious, and openly defiant," so as to militate against any equitable considerations.

Smith contends that the property soon will become a wetlands virtually identical to the original forested palustrine wetlands. Therefore, he argues, removal of the fill will not particularly benefit the environment. However, testimony by experts for both sides revealed that the wetlands on the property differ markedly from the wetlands originally on the site. One purpose of the Act is to restore and maintain the integrity of the nation's waters. See 33 U.S.C.A. § 1251(a). The wet-

6

lands as they currently exist do not function in the same way as they did prior to Smith's illegal filling. Removal of the fill is necessary to restore the wetlands to their natural and functional hydrology and therefore fulfill a central purpose of the Act.

III

Because the district court's order imposing a restorative injunction and a civil penalty of $35,000 did not constitute an abuse of discretion, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7